UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RANDALL & HEATHER LOZAR *et al.*,

    Plaintiffs,

    v.

BIRDS EYE FOODS, INC.,

    Defendant.

_____

Case No. 1:09-cv-10

HONORABLE PAUL MALONEY

# OPINION and ORDER
" *Lozar 5* "

**Denying Reconsideration of Dismissal of State-Law Claim
for Reimbursement of Remediation/Response Costs;**

**Granting the Plaintiffs Leave to Amend the Complaint to add
a NREPA Part 17 Claim for Injunctive and Declaratory Relief**

Randall and Heather Lozar and thirty-three others (collectively "Lozar") reside or own property near a fruit-processing plant in Fennville, Michigan. *See* Second Amended Complaint ("2d Am Comp") ¶¶ 1-29 and 40. Defendant Bird's Eye Foods, Inc. ("BEF") has not denied that it is the owner/operator of the facility as defined by CERCLA, 42 U.S.C. § 9601(20)(A). BEF's operations at the facility creates wastewater which contains organic matter from the fruit, such as dissolved sugar and suspended solids, and it disposes of this wastewater by spraying it onto its fields ("spray irrigation"), which are east of the facility and south of M-89. *See* 2d Am Comp ¶¶ 40 and 50. The Lozars allege that since the BEF facility opened, its spray irrigation has caused elevated levels of "contaminants" in the soil and "groundwater" on and around the facility premises. *Id.* ¶¶ 40 and 51.

The Lozars brought this environmental-protection action asserting a state common-law claim for negligence (count 1), a claim for recovery of response/remediation costs under federal and state environmental statutes (count 2), and another state common-law claim (count 3). For the remainder of the factual background and procedural history, the court incorporates its discussion in *Lozar v. Birds Eye, Inc.*, No. 1:2009-cv-10 Doc. 42, 2009 WL 5196154 (W.D. Mich. Dec. 22, 2009) (Maloney, C.J.) ("*Lozar 3*").

In *Lozar 3* (December 2009), this court granted in part and denied in part Birdseye's FED. R. CIV. P. 12(b)(6) motion to dismiss count 2, the claim for remediation and response costs, noting that to prevail on a CERCLA cost-recovery claim, a private party must establish that:

(1) the site on which the hazardous substances are contained is a "facility" as defined by 42 U.S.C. § 9601(9);

(2) a "release" or "threatened release" of a hazardous substance from the facility has occurred as defined by 42 U.S.C. § 9607(a)(4) (Liability section);

(3) such release or threatened release has caused the plaintiff to incur response costs which were "necessary" and "consistent with the national contingency plan" per 42 U.S.C. § 9607(a)(4) and (a)(4)(B); and

(4) the defendant is within one of the four classes of persons/entities subject to the liability provisions of CERCLA section 107(a), 42 U.S.C. § 9607(a).

*Lozar 3*, 2009 WL 5196154 at *13-14 (citations omitted). The Lozars' Remediation/Response Cost claim allegations are in paragraphs 446-459 of the second amended complaint. BEF argued that this claim should be dismissed for failure to state a claim on which relief can be granted for two reasons.

First, BEF contended that because the Lozars fail to state a claim for violation of CERCLA, RCRA and SWDA, they cannot seek remediation and response costs allegedly incurred as a result of such violations. As noted above, the court agreed with BEF that the plaintiffs' count one fails to state a claim for negligence based on a violation of the SDWA. Therefore, because there were no

allegations that BEF violated some particular provision of the SDWA *and* sufficient specific plausible allegations as to how BEF allegedly violated that provision, the plaintiffs' count two claim for recovery of response/remediation costs failed as to any costs allegedly incurred as a result of an alleged violation of the SDWA. *See Lozar 3*, 2009 WL 5196154 at *14.

Second, BEF contended that even if count one (negligence / negligence *per se*) stated a claim for violation of CERCLA and RCRA, the second amended complaint fails to sufficiently allege that many of the dozens of plaintiffs actually have incurred remediation/response costs as a result of BEF's alleged violation of those two statutes. On this score, the defendants argued as follows,

> There are now 40 Plaintiffs in this lawsuit. As Plaintiffs acknowledge through the plain allegations in the Second Amended Complaint, 26 of them have no claim for recovery of response costs under *any* environmental statute because they have not alleged that they have, in fact, incurred any response costs. * * *
>
> While ¶ 456 of the Second Amended Complaint purports to contain "a non-exclusive" [sic, non-exhaustive] list of those Plaintiffs who allegedly did incur response costs, the detailed allegations for each of the Plaintiffs in ¶¶ 56-405 show that no other Plaintiffs alleged any such costs.
>
> What is clear at the pleading stage is that a cost recovery claim under Count II must be dismissed at this time as to all Plaintiffs except those identified in Paragraph 456 of the Second Amended Complaint.

*Lozar 3*, 2009 WL 5196154 at *14-15 (quoting MTD at 7-8). **This court concluded that**

> **[w]hile the complaint might have been drafted with more precision, it does provide the requisite "direct or inferential allegations" pertaining to each of the four elements of a CERCLA cost-recovery claim generally.** First, paragraphs 446-447 of the second amended complaint adequately state a claim that the BEF Fennville plant constitutes a "facility" as defined by 42 U.S.C. § 9601(9) . . . . Second, paragraphs 41-43 and 419 allege that a "release" or "threatened release" of a hazardous substance from the facility has occurred as defined by CERCLA's 42 U.S.C. § 9607(a)(4) (Liability section). * * *
>
> Third, the plaintiffs state a claim as to the "necessary response costs" element of a CERCLA response-cost claim by virtue of the many paragraphs of the second amended complaint which allege that the contaminated groundwater (allegedly

caused by releases from BEF's property) made it necessary for various plaintiffs to
re-drill or re-dig existing wells or install a new well, replace well points after only
two years (in one instance), and (inferentially) to obtain clean and safe drinking
water at their own expense (in the case of plaintiffs who allege that their water is
unsafe but BEF is not providing them with water, *see, e.g.,* 2d Am Comp ).

The second amended complaint also states a claim on which relief can be granted as
to the fourth element of a CERCLA response-cost recovery claim, i.e., that BEF is
"within one of the four classes of persons/entities subject to the liability provisions
of CERCLA section 107(a), 42 U.S.C. § 9607(a)." BEF has not even contended that
it is not within a class of persons potentially subject to CERCLA liability, including,
on suitable proof, liability for response/remediation costs. Nor has BEF contended
that it is not an entity potentially subject to RCRA liability, including, on suitable
proof, liability for response/remediation costs.

*Lozar 3*, 2009 WL 5196154 at *15 (boldface added, italics in original).

**The court's December 2009 opinion declined to dismiss count two's claim for response/remediation costs, but required the plaintiff to take action to rectify the deficiencies in that count's pleading of such costs tied to each specific plaintiff.** The court stated as follows:

As noted above, BEF reasonably pointed out that the second amended complaint
does not specifically allege that all of the plaintiffs have incurred
response/remediation costs which are recoverable under CERCLA and/or RCRA
and/or Michigan statute. At this juncture, however, there is no scheduling order
governing the case, and no deadlines for discovery and motion practice.

The fairest course of action is to permit the plaintiffs an opportunity to remedy the
lack of specificity and completeness of their allegations on this score. The court will
permit them to file a third amended complaint, by a date certain, which sets forth all
specific allegations they wish to assert with regard to the timing, nature, and extent
of allegedly-recoverable response/remediation costs which *each particular plaintiff*
has already incurred. * * *

*Lozar 3*, 2009 WL 5196154 at *16. Accordingly, the court concluded *Lozar 3* by ordering as follows with regard to the count two claim for response and remediation costs:

**No later than Monday, March 1, 2010**, the plaintiffs **SHALL FILE a third amended complaint** which amends paragraph 456 only. The amended paragraph 456 shall:

-4-

>   – provide all available specific information regarding the nature, timing, and extent of response/remediation costs for which each plaintiff seeks recovery;
>
>   – specifi[y] the statute and statutory section(s) under which each plaintiff, or all of them, seek recovery of response/remediation costs;
>
>   – allege specific facts showing each plaintiff's compliance with the National Contingency Plan.

*Lozar 3*, 2009 WL 5196154 at *16-17 (boldface and capitalization in original, n.3 omitted). When the plaintiffs failed to file a third amended complaint complying with *Lozar 3*, the court in April 2010 dismissed both the federal-law and state-law remediation/response claims within count two. *See Lozar v. Birds Eye Foods, Inc.*, No. 1:2009-cv-10 Doc , 2010 WL 1418067, *8-9 (W.D. Mich. Apr. 6, 2010) (Maloney, C.J.) ("*Lozar 4*").

On May 28, 2010, the plaintiffs filed a motion denominated as their "Combined Motion for Reconsideration of the Court's Opinions and Orders on Defendant's Motion to Dismiss and Motion to File Third Amended Complaint" (Doc 55). The plaintiffs prefer to focus only on that portion of *Lozar 3* which directed them to amend the complaint to "allege specific facts showing each Plaintiff's compliance with the National Contingency Plan." Doc 55 at 2 ¶¶ 5-6. Plaintiffs contend that the court should have dismissed only the federal-law remediation/response-cost claims from count two, not the Michigan statutory remediation/response-cost claim, because "[c]ompliance with the National Contingency Plan is not an element of a cost recovery claim brought pursuant to Michigan law." *Id.* at 3 ¶ 7 (going on to quote several provisions of the Michigan NREPA Part 201, Mich. Comp. Laws § 324.20101 *et seq.* to show that they define "response activity costs" and "response activity" and impose liability for such costs without regard to compliance with National

Contingency Plan); *see also id.* at 5 ¶ 11 ("*Lozar IV*'s dismissal of the Plaintiffs' state law claim exceeded the scope of the Defendant's motion and is inconsistent with *Lozar III*'s directive that the Plaintiffs amend ¶ 456 [of the second amended complaint] to include allegations pertaining to the **federal** claim.") (boldface in original).

Essentially, plaintiffs proceed on the premise that their failure to supply facts regarding compliance with the National Contingency Plan (required for recovery of response/remediation costs under the federal CERCLA statute) did not justify dismissal of any *state-law* portion of count two. That premise is correct, but it provides no basis for reconsideration of *Lozar 4*'s dismissal of the state-law portion of count two. Plaintiffs conveniently ignore the rest of this court's order in *Lozar 3*. In addition to requiring the plaintiffs to allege facts showing compliance with the National Contingency Plan, the court directed them, without qualification, to "provide all available specific information regarding the nature, timing, and extent of response/remediation costs for which each plaintiff seeks recovery . . . ." *Lozar 3*, 2009 WL 5196154 at *16. Nothing in the language of the *Lozar 3* order reasonably suggested that it was directed only to allegations regarding *CERCLA*-recoverable response/remediation costs. On the contrary, *Lozar 3* clearly directed plaintiffs to identify "all available specific information regarding the nature, timing, and extent of response/remediation costs for which each plaintiff seeks recovery", *not* all information regarding costs for which each plaintiff seeks recovery *under CERCLA* or any particular statute. Moreover, the very next clause of the *Lozar 3* order directed plaintiffs to "specify the statute and statutory section(s) under which each plaintiff, or all of them, seek recovery of response/remediation costs . . . ." *Id.* That made it even more obvious that the court's order was not confined to claims for response/remediation costs under CERCLA.

In sum, the *Lozar 3* order did not give the plaintiffs any reason to believe that the state-law claim within count two would somehow survive if they failed to provide the information required by the court's order. Accordingly, there is no basis on which to reconsider the dismissal of the state-law portion of count two.

**Nor is there any basis for the court to permit the plaintiffs to amend the complaint to expand the properly-dismissed state-law response/remediation claim.** Plaintiffs,

> [i]n addition to seeking reinstatement of the [NREPA] Part 201 claim regarding the recovery of the costs which 14 of the present Plaintiffs incurred in evaluating the pollution in their well water and/or re-digging their wells because of the presence of the contaminated groundwater . . . the Plaintiffs seek to amend their complaint to include the recovery of the cost of obtaining water from the City of Fennville (all of Plaintiffs) and the recovery of the cost of the interim purchasing of bottled water (some of the Plaintiffs):  * * *

Doc 55 at 5-6 ¶ 13. The time for the plaintiffs to make clear that they were seeking response/remediation costs under NREPA Part 201 – whether for the type of costs identified in 2d Am Comp ¶ 456 or the additional costs identified now (purchase of replacement City water or bottled water) – was when the court expressly directed them to specify the statutory basis for each remediation/response claim and provide plaintiff-specific remediation/response cost allegations. That deadline was March 1, 2010, which came and went five weeks before the court stopped waiting and dismissed count two in *Lozar 4*.

**The court will, however, allow the plaintiffs to amend their complaint to assert a claim for injunctive and declaratory relief under Part 17 of NREPA a/k/a "MEPA."** Unlike count two's dismissed claims for monetary reimbursement of plaintiffs' response/remediation costs, the

court has never imposed a deadline for the plaintiffs to specify legal authority or supply factual allegations regarding *declaratory or injunctive* relief pertaining to conduct or matters *other than* monetary reimbursement of such costs. Moreover, adding a claim for declaratory and/or injunctive relief under Michigan's NREPA Part 17 at this juncture the litigation will not unduly prejudice the defendants given that discovery continues for nearly another year and a half (through October 31, 2011) and trial is not scheduled until July 2012. Nor will the addition of a NREPA Part 17 declaratory/injunctive-relief claim as proposed, surprise Birds Eye, as the existing prayer for relief already asks the court to enjoin Birds Eye to "engage in the remediation procedures prescribed by the applicable law *pursuant to* CERCLA and *the NREPA*" and further, to enjoin Birds Eye from "further acts of groundwater contamination." 2d Am Comp at 56 ¶¶ 5 and 7 (emphasis added).

## ORDER

The plaintiffs' "combined motion for reconsideration of the court's opinions and orders on defendant's motion to dismiss and motion to file third amended complaint" **[document 55] is GRANTED in part and DENIED in part as follows:**

– The plaintiffs' request for partial reconsideration of *Lozar v. Birds Eye, Inc.*, 2009 WL 5196154 (W.D. Mich. Dec. 22, 2009) ("*Lozar 3*") and *Lozar v. Birds Eye Foods, Inc.*, 2010 WL 1418067 (W.D. Mich. Apr. 6, 2010)("*Lozar 4*") is denied. All of count two remains dismissed.

– No later than Friday, July 2, 2010, the plaintiffs **MAY FILE** a third amended complaint which is identical to the second amended complaint except that it adds as count four a claim for injunctive and declaratory relief under Part 17, MICH. COMP. LAWS § 324.1701 *et seq.*

If the plaintiffs do not file such claim by said date, the court will not permit the plaintiffs to add such claim at a later date.

Because this order does not dispose of all claims as to all parties,[1] it is not a final order, and it is not immediately appealable. See *Tanner Co. v. US*, 575 F.2d 101, 102 (6th Cir. 1978).

**IT IS SO ORDERED** on this   1st    day of June 2010.

        /s/ Paul L. Maloney
        Honorable Paul L. Maloney
        Chief United States District Judge

---

[1] The following claims remain in the case following today's decision:

- the portion of count one (negligence) which claims that defendant committed negligence without reliance on a negligence *per se* theory;

- the portion of count one (negligence) which claims that defendant committed negligence *per se* by violating CERCLA and/or RCRA and/or Michigan statute;

- all of count three, a claim under Michigan common law.